ROBINSON & COLE LLP
Adam J. Petitt, Esq.
666 Third Avenue, 20th Floor
New York, New York 10017
Telephone: (212) 451-2900
Email: apetitt@rc.com

*Attorneys for Defendant Aetna*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| ROWE PLASTIC SURGERY OF NJ LLC, | : |
| | : Case No. 2:25-cv-02979-KSH-JRA |
| Plaintiff, | : |
| | : |
| -against- | : |
| | : |
| AETNA, | : |
| | : |
| Defendant. | : |

---

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO CONFIRM ARBITRATION AWARD

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ...................................................................................................... 1

LEGAL ARGUMENT ................................................................................................................. 2

    I.     Defendant Aetna is Not a Proper Party ................................................................... 2

    II.    Background and Overview of the NSA. .................................................................. 2

    III.   The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Complaint and
           Motion to Confirm. ................................................................................................ 4

    IV.   The No Surprises Act Forecloses Plaintiff's Requested Relief. ............................. 6

          A.    The NSA does not allow motions to confirm IDR awards under 9
               U.S.C. § 9. ................................................................................................. 6

          B.    The NSA did not create a private right of action under 42 U.S.C. §
               300gg-111. ............................................................................................... 10

CONCLUSION ......................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Sandoval*,
532 U.S. 275 (2001)............................................................................................11, 17, 18

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013).........................................................................................................4

*Camesi v. University of Pittsburgh Medical Center*,
729 F.3d 239 (3d Cir. 2013)..........................................................................................4

*Cort v. Ash*,
422 U.S. 66 (1975)........................................................................................................11

*Ellis, Rojas, Ross & Debs, Inc. v. UMR, Inc.*,
No. 24-cv-20428 (DPG), 2025 WL 742761 (S.D. Fla. Mar. 9, 2025)............................5, 7, 10

*FHMC LLC v. Blue Cross and Blue Shield of Ariz. Inc.*,
No. 23-cv-876 (PHX)(GMA), 2024 WL 1461989 (D. Ariz. Apr. 4, 2024) ................10, 12, 17

*Genesis Healthcare Corp. v. Symczyk*,
133 S. Ct. 1528 (2013)....................................................................................................4

*Genesis Laboratory Management LLC v. United Health Group, Inc.*,
No. 21-cv-12057 (EP)(JSA), 2023 WL 2387400 (D.N.J., Mar. 6, 2023)...............................15

*GPS of New Jersey M.D., P.C. v. Horizon Blue Cross & Blue Shield*,
No. 22-cv-6614 (KM)(JBC), 2023 WL 5815821 (D.N.J. Sept. 8, 2023) ...........................9, 13

*Guardian Flight, L.L.C. v. Health Care Service Corporation*,
140 F.4th 271 (5th Cir. 2025) ....................................................................................5, 8, 10, 13

*Guardian Flight, LLC v. Aetna Health Inc.*,
711 F.Supp.3d 662 (S.D. Tex. 2024) ...............................................................................5

*Guardian Flight LLC v. Aetna Life Ins. Co.*,
No. 24-cv-00680 (MPS), 2025 WL 1399145 (D. Conn. May 14, 2025) ................9, 13, 14, 17

*Guardian Flight LLC v. Health Care Service Corp.*,
735 F.Supp.3d 742 (N.D. Tex. 2024) .............................................................................5, 7

*Haller v. U.S. Dep't of Health & Human Services*,
621 F. Supp. 3d 343 (E.D.N.Y. 2022), *aff'd in part, vacated on other grounds and remanded*, No. 22-3054, 2024 WL 290440 (2d Cir. Jan. 23, 2024) ...............7, 11, 12, 18

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*,
  530 U.S. 1 (2000)......................................................................................................9

*Independent Laboratory Employees' Union, Inc. v. ExxonMobil Research and
  Engineering Co.*,
  No. 18-cv-10835 (BRM)(DEA), 2019 WL 3416897 (D.N.J., July 29, 2019)........................14

*Jeffrey Farkas, M.D., LLC v. Horizon Blue Cross Blue Shield of New Jersey*,
  -- F.Supp.3d --, 2025 WL 1860241 (E.D.N.Y. July 2, 2025).....................................5, 8, 10, 13

*Laime v. United States Tr.*,
  540 U.S. 526 (2004)..................................................................................................9

*Lawrence Tp. Bd. of Educ. v. New Jersey*,
  417 F.3d 368 (3d Cir. 2005).......................................................................................18

*Mazo v. New Jersey Secretary of State*,
  54 F.4th 124 (3d Cir. 2022) ........................................................................................4

*Med-Trans Corp. v. Capital Health Plan, Inc.*,
  700 F. Supp. 3d 1076 (M.D. Fla. Nov. 1, 2023), *appeal dismissed*, No. 24-
  10134, 2024 WL 3402119 (11th Cir. May 30, 2024) .......................................................5, 7, 9

*Murphy Med. Associates, LLC v. Yale Univ.*,
  120 F.4th 1107 (2d Cir. 2024) .....................................................................................15

*Ne. Reg'l Council of Carpenters v. KRS Constr. Grp., Civ.*
  No. 15-cv-47 (FLW)(LHG), 2015 WL 4773367 (D.N.J. Aug. 13, 2015) ................................14

*Neurological Surgery Practice of Long Island, PLLC v. U.S. Dep't of Health &
  Human Servs.*,
  No. 24-cv-4503 (HG), 2025 WL 1489603 (E.D.N.Y. May 23, 2025) ....................................18

*Riccio v. Sentry Credit, Inc.*,
  954 F.3d 582 (3d Cir. 2020).........................................................................................9

*Road-Con, Inc. v. City of Philadelphia*,
  120 F.4th 346 (3d Cir. 2024) ....................................................................................4, 6

*Robinson v. PNC Bank, Civ.*
  No. 13-cv-7818 (SRC), 2017 WL 2399082 (D.N.J. June 2, 2017) .......................................14

*In re Szczyporski*,
  34 F.4th 179 (3d Cir. 2022) ........................................................................................9

*Teamsters-Employer Local No. 945 Pension Fund v. Acme Sanitation Corp.*,
  963 F. Supp. 340 (D.N.J. 1997)...................................................................................14

iii

*Tex. Med. Ass'n v. United States HHS*,
  587 F.Supp.3d 528 (E.D. Tex. 2022)............................................................................4

*Thompson v. Thompson*,
  484 U.S. 174 (1988)......................................................................................................11

*Touche Ross & Co. v. Redington*,
  42 U.S. 560 (1979)........................................................................................................11

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)........................................................................................................5

*Uzuegbunam v. Preczewski*,
  592 U.S. 279 (2021)........................................................................................................4

**Statutes**

Consolidated Appropriations Act of 2021 ..........................................................................2

Coronavirus Aid, Relief, and Economic Security Act of 2020.........................................15

Families First Coronavirus Response Act of 2020 ...........................................................15

Federal Arbitration Act of 1925............................................................................. *passim*

No Surprises Act of 2020......................................................................................... *passim*

**Rules and Regulations**

Fed. R. Civ. P. 8 ..................................................................................................................2

Fed. R. Civ. P. 12 ................................................................................................................2

45 C.F.R. § 149.10 ..............................................................................................................3

45 C.F.R. § 149.20 ..............................................................................................................3

45 C.F.R. § 150.301 ............................................................................................................8

86 Fed. Reg. 36872, 36874 (July 13, 2021)........................................................................3

**Other Authorities**

CENTERS FOR MEDICARE & MEDICAID SERVICES, *Providers: Submit a
  Billing Complaint*, https://www.cms.gov/nosurprises/policies-and-
  resources/providers-submit-a-billing-complaint (last viewed August 28, 2025) ...................12

U.S. Government Accountability Office, GAO-24-106335, *Private Health Insurance: Roll Out of Independent Dispute Resolution Process for Out-of-Network Claims Has Been Challenging*, (December 2023), https://www.gao.gov/assets/870/864587.pdf (last viewed August 28, 2025)..........................16

v

## **PRELIMINARY STATEMENT**

Plaintiff's motion to confirm arbitration award seeks to enforce an Independent Dispute Resolution ("IDR") award that Plaintiff alleges Defendant Aetna failed to pay pursuant to the No Surprises Act ("NSA"), 42 U.S.C. § 300gg-111(c), by arguing this Court should enforce the award pursuant to Section 9 of the Federal Arbitration Act ("FAA"). However, as an initial matter, Plaintiff sued a non-entity "Aetna", which is a trade name used for different products and services of subsidiaries of Aetna Inc. Further, this Court lacks subject matter jurisdiction over Plaintiff's Complaint and motion because non-party Aetna Life Insurance Company ("ALIC") paid the IDR award to Plaintiff. Plaintiff has neither an injury in fact nor a live case or controversy that this Court can preside over under Article III of the Constitution.

Nevertheless, Plaintiff's motion must be denied because Plaintiff lacks a private right of action under the NSA to move this Court to confirm or enforce an IDR award. Rather, Congress vested various federal departments with extensive regulatory oversight to ensure compliance with the NSA's provisions, including the enforcement of an IDR award. Additionally, Plaintiff seeks to confirm an IDR award pursuant to Section 9 of the FAA. However, the FAA's procedural laws governing confirmation of an arbitration award, 9 U.S.C. § 9, were not incorporated into the NSA and do not apply to IDR awards under the NSA.

As such, Plaintiff's motion seeking to enforce the IDR award must be denied, and Plaintiff's Complaint, which seeks the same relief, should be dismissed.

## **FACTUAL BACKGROUND**

Plaintiff, Rowe Plastic Surgery of NJ LLC ("Plaintiff"), is an out-of-network medical practice that purportedly specializes in plastic and reconstructive surgery. (Compl. ¶ 5). On December 20, 2023, Plaintiff allegedly rendered surgical procedures to patient "M.M." (*Id.,* ¶ 6). At the time of the surgical procedure, M.M. was enrolled in a health benefits plan that was

1

administered by Aetna Life Insurance Company ("ALIC"), a non-party to this action. (*See* Declaration of Katherine O'Brien ("O'Brien Decl.") ¶ 5). Plaintiff submitted claims to ALIC for out-of-network surgical procedures rendered to M.M. (Compl., ¶ 8). Plaintiff then initiated IDR proceedings, and the IDR entity's decision is reflected in DISP-1235000. (Compl. Exh. A). The IDR entity awarded Plaintiff $75,000 for DISP-1235000. (*Id.*; *see also* ECF No. 11-4). ALIC paid Plaintiff in full satisfaction of the IDR award for DISP-1235000 on May 2, 2025. (O'Brien Decl., ¶ 5, Exh. 1).

## LEGAL ARGUMENT

### I.    Defendant Aetna is Not a Proper Party

As an initial matter, Plaintiff has erroneously sued a non-legal entity. Through its complaint and motion to confirm, Plaintiff seeks to confirm an IDR award relating to services Plaintiff allegedly rendered to a patient insured by "Aetna." (Compl. ¶ 7). However, the patient whose medical care is at issue in DISP-1235000 – M.M. – was enrolled in a health benefits plan administered by ALIC, a fact Plaintiff knew given it was plainly evident on the EOB for the claim.

| | |
|---|---|
| Group Name: OUTFRONT MEDIA LLC | Group Number: 0865311-11-002  A P1._;W |
| Product: **Aetna Choice® POS II** | Network ID: **00000** |
| | Funding: **Self-funded** |
| **Aetna Life Insurance Company** | Network Status: **Out-of-Network** |

(O'Brien Decl., ¶ 5, Exh. 1).

It is thus axiomatic that Plaintiff cannot state a claim or seek relief relating to an IDR award against Defendant "Aetna." *See* Fed. R. Civ. P. 8(a)(2), 12(b)(6).

Nonetheless, Plaintiff sued "Aetna." Accordingly, Plaintiff's Complaint should be dismissed and motion to confirm denied.

### II.    Background and Overview of the NSA.

Congress enacted the NSA as part of the Consolidated Appropriations Act of 2022, 42 U.S.C. § 300gg-111 *et seq.*, which went into effect on January 1, 2021. The NSA was designed to

"protect participants, beneficiaries, and enrollees in group health plans and group and individual health insurance coverage from surprise medical bills when they receive emergency services, [and] non-emergency services from nonparticipating providers at participating facilities … under certain circumstances." Requirements Related to Surprise Billing; Part I, 86 Fed. Reg. 36872, 36874 (July 13, 2021). The NSA aims to prevent surprise bills from out-of-network providers by limiting the amount the patient pays and setting up a detailed framework between the out-of-network provider and the "*group health plan, or health insurance issuer offering group or individual health insurance coverage*" (the "Insurer") to arrive at a payment amount that reflects what would be paid under realistic market conditions. *See* 42 U.S.C. §§ 300gg-111(a)(1) (coverage for emergency services) (emphasis added); 300gg-111(b)(1) (coverage for non-emergency services by out-of-network providers at in-network facilities); 45 C.F.R. §§ 149.10(b) ("establish[ing] standards for [Insurers]…with respect to surprise medical bills"); 149.20(a) (applicability of NSA regulations to "[Insurers]").

Under the NSA's framework, the Insurer must first issue an initial payment or notice of denial of payment to a provider within 30 days after the provider submits a bill for an out-of-network service. 42 U.S.C. §§ 300gg-111(a)(1)(C)(iv), -111(b)(1)(C). If the provider disagrees with the Insurer's determination, the provider may initiate a 30-day open-negotiation period with the Insurer over the claim. *See id*. § 300gg-111(c)(1)(A). If the Insurer and out-of-network provider cannot resolve the dispute through negotiation, the parties may then proceed under the NSA's IDR process. *See id.* § 300gg-111(c)(1)(B). Either the Insurer or the out-of-network provider may invoke the IDR process, and the parties may continue to negotiate even after it has been invoked. *See id.* § 300gg-111(c)(2)(B).

3

The IDR process is "baseball style," meaning the "provider and insurer each submits a proposed payment amount and explanation" to the IDR entity, and the IDR entity "must select one of the two proposed payment amounts." *Tex. Med. Ass'n v. United States HHS*, 587 F.Supp.3d 528, 534 (E.D. Tex. 2022). "Not later than 30 days after the selection of the certified IDR entity … the certified IDR entity shall" notify the parties of its determination. 42 U.S.C. § 300gg-111(c)(5)(A)(ii). IDR awards are binding subject to limited exceptions, *see id.* § 300gg-111(c)(5)(E)(i), and payment of an IDR award "shall be made … not later than 30 days after the date on which such determination is made." *Id.* § 300gg-111(c)(6).

## III.    The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Complaint and Motion to Confirm.

Under Article III of the Constitution, judicial power extends to all cases and controversies. U.S. Const. Art. III, § 2. However, a case is "moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Mazo v. New Jersey Secretary of State,* 54 F.4th 124, 135 (3d Cir. 2022) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). An actual controversy "must be extant at all stages of review, not merely at the time the complaint is filed." *Camesi v. University of Pittsburgh Medical Center*, 729 F.3d 239, 247 (3d Cir. 2013) (citing *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1528 (2013)). A case is "moot" when in the course of litigation, a court can no longer provide a plaintiff with any effectual relief. *Road-Con, Inc. v. City of Philadelphia*, 120 F.4th 346, 356 (3d Cir. 2024) (citing *Uzuegbunam v. Preczewski*, 592 U.S. 279, 282 (2021)).

"The doctrine of standing generally assesses whether [a legally cognizable] interest exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings." *Uzuegbunam*, 592 U.S. at 282. To have standing, Plaintiff must show that it has

4

suffered an "injury in fact that is concrete;" in other words, an injury that is "real, and not abstract." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423-424 (2021).

As an initial point, and as further detailed below in Section IV, Plaintiff lacks standing under Article III because the "NSA expressly *bars* judicial review of IDR awards *except* as to the specific provisions borrowed from the FAA." *Guardian Flight, L.L.C. v. Health Care Service Corporation*, 140 F.4th 271, 275 (5th Cir. 2025) (emphasis in original); *See also Jeffrey Farkas, M.D., LLC v. Horizon Blue Cross Blue Shield of New Jersey*, -- F.Supp.3d --, 2025 WL 1860241, *5 (E.D.N.Y. July 2, 2025) ("the NSA explicitly provides a 'strictly limited form of judicial review' of IDR decisions. [ ] The NSA plainly does not provide for the confirmation of awards."); Drs. *Ellis, Rojas, Ross & Debs, Inc. v. UMR, Inc.*, No. 24-cv-20428 (DPG), 2025 WL 742761 *3 (S.D. Fla. Mar. 9, 2025) ("NSA does not contemplate any judicial review of an IDR award 'except in a case described in any of paragraphs (1) through (4) of section 10(a) of [the FAA]', 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II)"); *Guardian Flight LLC v. Health Care Service Corp.*, 735 F.Supp.3d 742 (N.D. Tex. 2024) ("the NSA does not contain an implied cause of action for out-of-network healthcare providers to enforce IDR awards."). Nor does the NSA incorporate Section 9 of the FAA, which Plaintiff relies on in its Complaint and motion, or even reference judicial confirmation of an IDR award. *See Guardian Flight, LLC v. Aetna Health Inc.*, 711 F.Supp.3d 662, 669-70 (S.D. Tex. 2024); *Med-Trans Corp. v. Capital Health Plans*, 700 F.Supp.3d 1076 (M.D. Fla. 2023). As such, Plaintiff lacks an injury in fact or legally cognizable interest in this matter.

Moreover, Plaintiff lacks standing and/or its claims are moot because ALIC has fully satisfied the IDR award at issue. On May 2, 2025, ALIC paid Plaintiff in full satisfaction of the IDR award DISP-123500. (O'Brien Decl., ¶ 5, Exh. 1).

5

Nonetheless, with regard to the IDR award Plaintiff seeks to confirm, there is no "effectual relief" Plaintiff can obtain from the Court as the award has already been paid, and therefore there is no live case or controversy. *Road-Con, Inc. v. City of Philadelphia*, 120 F.4th at 356. Plaintiff lacks standing and its claims are moot.

Accordingly, the Court lacks subject matter jurisdiction and Plaintiff's motion to confirm should be denied and its Complaint dismissed as a result.

## IV.    The No Surprises Act Forecloses Plaintiff's Requested Relief.

If Plaintiff had sued the correct party and the IDR award had not been satisfied, the outcome would not change. The NSA does not recognize either of the two causes of action Plaintiff tries to gloss onto it. The critical question is not whether IDR awards are described as "binding" rather, the question is what *remedy* Congress chose to enforce such binding awards. Consistent with its overall goal to streamline (not multiply) litigation over routine medical billing, Congress chose agency enforcement. That considered legislative choice, not Plaintiff's desire for a more litigious system, is what governs.

### A.    The NSA does not allow motions to confirm IDR awards under 9 U.S.C. § 9.

When Congress drafted the NSA, it expressly chose to incorporate certain provisions of the FAA, but not others. One of the excluded provisions is the very § 9 motion to confirm that Plaintiff seeks to enforce the awards under. Because Congress declined to grant this remedy, Plaintiff's demand for it fails to state a claim.

The NSA almost entirely prohibits judicial review of IDR awards. The NSA provides that IDR awards "shall not be subject to judicial review" other than permitting courts to *vacate* IDR awards under the same four grounds a court can vacate an arbitration award under the FAA. *See* 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II); *see also* 9 U.S.C. § 10(a). While the NSA borrowed language from § 10 of the FAA, which governs vacatur of arbitration awards, Congress notably

declined to incorporate § 9 of the FAA, which enables parties to confirm arbitration awards. "The NSA's structure conveys Congress' policy choice to enforce the statute through administrative penalties, not a private right of action." *Guardian Flight LLC*, 2025 WL 1661358 at *4.

In *Med-Trans Corp.*, the district court for the Middle District of Florida held that "[a]lthough the NSA invokes the FAA, it incorporates only one specific aspect," § 10(a) regarding vacating an arbitration award. *Med-Trans Corp. v. Capital Health Plan, Inc.*, 700 F. Supp. 3d 1076, 1082 (M.D. Fla. Nov. 1, 2023) (citing 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II)), *appeal dismissed*, No. 24-10134, 2024 WL 3402119 (11th Cir. May 30, 2024). As such, none of the other provisions of the FAA, including § 9 regarding confirmation of an award, are applicable to interpretations of the NSA. *Id*. at 1083–84. If it were Congress' intent to incorporate other parts of the FAA into the NSA, it would have done so. *Id.* Accordingly, the district court held, "[n]either the NSA nor the FAA says that the FAA bears on the NSA outside the four explicitly incorporated paragraphs [§ 10(a)(1)-(4) of the FAA]. The [c]ourt will not assume otherwise." *Id*. at 1084.

A year later, in *Drs. Ellis, Rojas, Ross & Debs, Inc.*, the district court for the Southern District of Florida likewise agreed, noting that the NSA did not "incorporate section 9 of the FAA or even discuss judicial confirmation of an IDR award." *Drs. Ellis, Rojas, Ross & Debs, Inc. v. UMR, Inc.*, No. 24-cv-20428 (DPG), 2025 WL 742761, at *3 (S.D. Fla. Mar. 9, 2025), *appeal pending*, 25-11110 (11th Cir.). Moreover, the district court recognized that § 9 of the FAA provides that the court may confirm an award "[i]f the parties in their *agreement* have agreed." *Id.* at n.2 (quoting 9 U.S.C. § 9). But under the NSA the parties do not "agree" to arbitrate. Rather, the NSA created a "new public right" for a provider to recover payments directly from the insurer. *See Haller v. U.S. Dep't of Health & Human Services*, 621 F. Supp. 3d 343, 353–54 (E.D.N.Y. 2022), *aff'd*

7

*in part, vacated on other grounds and remanded*, No. 22-3054, 2024 WL 290440 (2d Cir. Jan. 23, 2024). As such, § 9 of the FAA does not apply to the NSA.

In June, in *Guardian Flight, L.L.C. v. Health Care Service Corporation*, the Fifth Circuit held firm that Congress's intent was not to incorporate Section 9 of the FAA into the NSA. *Guardian Flight*, 140 F.4th 271 at 275. The Fifth Circuit notes that Congress could have incorporated all of Section 9 of the FAA into the NSA, but specifically chose not to. *Id.* at 276. Instead, Congress "empowered [the Department of Health and Human Services] to assess penalties against insurers for failure to comply with the NSA." *Id.* (citing 42 U.S.C. § 300gg-22(b)(2)(A); 45 C.F.R. § 150.301 *et seq.*). The NSA's structure conveys Congress's policy choice to enforce the statute through administrative penalties, *not* through Section 9 of the FAA. *Id.*

Most recently, in *Farkas v. Horizon Blue Cross Blue Shield of New Jersey*, the Eastern District of New York came to the same conclusion while considering a complaint with the identical two causes of action—(1) violation of the NSA, and (2) confirmation under Section 9 of the FAA, filed by the same law firm representing Plaintiff here. 2025 WL1860241 (E.D.N.Y. July 2, 2025). Following the Fifth Circuit's reasoning, the district court reasoned:

> the NSA explicitly provides for a "strictly limited form of judicial review" of IDR decisions. *Guardian Flight*, 140 F.4th at 277. The NSA plainly does not provide for the confirmation of awards. *See id.* at 276 ("Congress chose not to incorporate § 9 into the NSA. It incorporated only parts of § 10. By contrast, in other statutes, Congress *has* incorporated § 9 to create a private right of action." (emphasis in original)). More generally, there is no indication that, as the parties would have it, Congress sought to provide those bound to IDR awards with every remedy available under the FAA. To the contrary, "the NSA's text and structure point in the opposite direction. The NSA expressly *bars* judicial review of IDR awards *except* as to the specific provisions borrowed from the FAA." *Id.* at 275 (emphases in original).

*Id.* at *6.

8

This analysis and rationale accurately reflect Third Circuit law on statutory interpretation. When the statutory language is "plain and unambiguous" the "sole function of the courts" is to enforce the statute according to its terms. *In re Szczyporski*, 34 F.4th 179, 188 (3d Cir. 2022) (quoting *Laime v. United States Tr.,* 540 U.S. 526, 534 (2004); *See also Riccio v. Sentry Credit, Inc.,* 954 F.3d 582, 588 (3d Cir. 2020) ("when a 'statute's language is plain, the sole function of the courts' – at least where the disposition required by the text is not absurd – 'is to enforce it according to its terms.'") (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6 (2000)). Congress invoked *only* one section of the FAA to prescribe "cases" where an IDR award can be "subject to judicial review" – nothing more. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II). The FAA's procedural requirements for confirming an IDR award, such as 9 U.S.C. § 9, are not incorporated.

In arguing to the contrary, Plaintiff relies on two cases that do not help it. The first case focused on whether an IDR award should be vacated under §§ 10(a)(3) and (4) of the FAA, which provisions the NSA expressly incorporates. *GPS of New Jersey M.D., P.C. v. Horizon Blue Cross & Blue Shield*, No. 22-cv-6614 (KM)(JBC), 2023 WL 5815821, at *3–4 (D.N.J. Sept. 8, 2023). On a cross-motion to confirm under § 9, *no party contested* the applicability of § 9. In *GPS*, "the parties assumed that 9 U.S.C. § 9 applied to IDR awards, and the court's analysis focused on § 10(a)(3) and (4) . . . . The court simply had no need to grapple with the broader applicability of the FAA to the NSA." *Med-Trans.*, 700 F. Supp. 3d at 1083–84 (analyzing *GPS*).

The second case, *Guardian Flight LLC v. Aetna Life Ins. Co.*, No. 24-cv-00680 (MPS), 2025 WL 1399145, did not concern § 9 of the FAA at all, and instead dealt with whether a standalone private right of action exists under the NSA, separate from the confirmation process. *Id.* at *1 (D. Conn. May 14, 2025). As such, to the extent Plaintiff relies on it, it is inapposite.

9

The cases that actually engage with this question uniformly hold that Congress did not allow confirmation under § 9 of the FAA when it specifically excluded that provision from the list of FAA sections the NSA incorporates. Accordingly, judgment should render for Defendant Aetna on Count One of the Complaint.

**B.      The NSA did not create a private right of action under 42 U.S.C. § 300gg-111.**

Congress also declined to create the second remedy that Plaintiff seeks here, a private right of action under the NSA. (Pl. Mem. 6-15). Plaintiff is forced to concede that no such remedy appears in the express text of the statute. So, Plaintiff is left trying to imply it into language that says no such thing. Because Congress declined to grant this remedy, Plaintiff's demand for it fails to state a claim.

A plain reading of the NSA makes clear that Congress did not grant out-of-network providers, like Plaintiff, a private right of action to enforce an IDR award. Likewise, no implied right of action for remedies relating to payment of IDR awards exists as such remedies and complaints about the IDR process fall within the purview of the Department of Health and Human Services ("HHS"), the Department of Labor, and the Department of the Treasury. *See Jeffrey Farkas, M.D., LLC*, 2025 WL 1860241 at *5 ("the NSA contains no express right of action to enforce or confirm an IDR award"); *Guardian Flight LLC,* 140 F.4th at 276 ("Providers' enforcement action depends on the availability of a private right of action not present in the NSA … We will not find an implied right of action where Congress expressly forecloses it."); *FHMC LLC v. Blue Cross and Blue Shield of Ariz. Inc.*, No. 23-cv-876 (PHX)(GMA), 2024 WL 1461989, at *3 (D. Ariz. Apr. 4, 2024) ("An implied right of action is incongruous with such a detailed statutory scheme, in which judicial review is limited to specific instances."); *Drs. Ellis,* 2025 WL

742761, at *3 ("the NSA does not contemplate any judicial review of an IDR award 'except in a case described in any of paragraphs (1) through (4) of section 10(a) of [the FAA].").

In determining whether an implied right of action exists, the Court must look to the four-factor test under *Cort v. Ash,* 422 U.S. 66 (1975). However, the Supreme Court has since emphasized that congressional intent is the primary determinant. *See Touche Ross & Co. v. Redington*, 42 U.S. 560, 568, 575-76 (1979); *see also Thompson v. Thompson*, 484 U.S. 174, 189 (1988) (Scalia, J., concurring) ("[W]e effectively overruled *Cort v. Ash* analysis in *Touche Ross* … converting one of its four factors (congressional intent) into *the determinative factor*, with the other three merely indicative of its presence or absence."). As the Court later explained:

> Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.

*Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001) (citations omitted). There is simply no direct expression by Congress of any intent to provide a private right of action or private remedy under the NSA to out-of-network providers, such as Plaintiff, to enforce an IDR award.

When Congress enacted the NSA, it permitted providers to recover payment directly from insurers, which is a "new public right" as opposed to a "private right."[1] *Haller*, 621 F. Supp. 3d at 354–55. As such, "[o]ut-of-network providers' claims against insurers do not arise under state common law, but instead depend 'upon the will of [C]ongress' and flow from a federal statutory

---

[1] The Seventh Amendment requires a jury trial when a cause of action asserts a "private right," at common law. *Haller*, 621 F. Supp. 3d at 352–53. By contrast, when Congress creates new statutory "public rights," it may assign their adjudication to an agency (bypassing a jury trial) without violating the Seventh Amendment. *Id.*

11

scheme. Indeed, a provider's right to recover payment directly from an insurer is 'completely dependent upon' the adjudication of a claim created by the [NSA]." *Id.* (cleaned up). The NSA does not compel providers to use the IDR process to resolve their claims for recovery against insurers. Instead, the NSA itself creates the provider's right to recover payments directly from the insurer. *Id.* at 353–54. In doing so, Congress expressly vested HHS, an administrative entity with extensive regulatory oversight, to ensure compliance with the NSA's provisions, including rulemaking authority over the IDR process and annual audit requirements of health plans, 42 U.S.C. §§ 300gg-111(a)(2), as well as control over the certification (and decertification) of all IDR entities. *See id.* § 300gg-111(c)(4).

Moreover, HHS has an online portal for providers to submit complaints—such as the very complaint Plaintiff makes in this case regarding Defendant's alleged failure to timely pay an IDR award – and has the authority to perform complaint-based audits and enforce the NSA's provisions.[2] The NSA's assignment of oversight to an administrative agency and empowerment of HHS to prescribe administrative remedies further evinces Congress' intent that HHS, not the courts, ensure insurers make payment on duly authorized IDR awards and to enforce such awards. *See FHMC LLC*, 2024 WL 1461989, at *3 ("Plaintiffs have the option to . . . notify [CMS] about issues with the IDR process, and [ ] report[ an insurer] to CMS for their violations of the NSA, including [an insurer's] alleged failure to comply with the adjudicatory time limits specified in the statute…. ***There is no implied private right of action in such circumstances***." (internal quotations omitted) (emphasis added)).

---

[2] *See* CENTERS FOR MEDICARE & MEDICAID SERVICES, *Providers: Submit a Billing Complaint*, https://www.cms.gov/nosurprises/policies-and-resources/providers-submit-a-billing-complaint (portal allowing providers to "report a violation of the [NSA]") (last viewed August 28, 2025).

Tellingly, Plaintiff relies on an amicus brief from the United States which failed to persuade the Fifth Circuit in *Guardian Flight LLC v. Health Care Services Corp.*, and *GPS of New Jersey, M.D., P.C.*, a distinguishable decision from the District of New Jersey which did not address whether there is a private right of action under the NSA. (*See* Pl. Mem. 6-12). Plaintiff asserts, as it's counsel has done in numerous cases in this District[3], that an amicus brief written by the U.S. Government should hold sway in the Court's decision-making. (*See* Pl. Mem. 10-12). However, the Fifth Circuit squarely rejected the amicus brief's reasoning in *Guardian Flight, LLC,* holding that there is no implied right of action contained in the NSA. *See Guardian Flight, LLC,* 140 F.4th at 276. Indeed, Plaintiff's lawyers proffered the same amicus brief to the Eastern District of New York in the *Farkas* matter to no avail. (*See Jeffrey Farkas, M.D., LLC*, 25-cv-00054 (HG) (E.D.N.Y.), ECF No. 22, Exh. D). The Eastern District of New York likewise held that there is no private right of action under the NSA. *See Jeffrey Farkas, M.D., LLC*, 2025 WL 1860241 at \*5. Plaintiff's insistence that a disregarded amicus brief should control Congressional intent is wrong and should be ignored, as it has been by both the Fifth Circuit and the Eastern District of New York.

In *Guardian Flight LLC v. Aetna Life Ins. Co.* (D. Conn.), the one case in the country that has been willing to discern a private right of action in the NSA, the district court there relied on two mistaken premises to reach that conclusion. No. 24-cv-00680 (MPS), 2025 WL 1399145 (D. Conn. May 14, 2025). Notably, the two most recent decisions on the issue, *Guardian Flight LLC* (5th Cir.) and *Farkas*, have expressly rejected the reasoning in *Guardian Flight LLC* (D. Conn.). *Guardian Flight LLC* (D. Conn.) remains an outlier and a motion to certify that decision for

---

[3] *See e.g. Igea Brain and Spine, P.A., v. Aetna, Inc.*, 2:25-cv-01488-WJM-AME (DNJ) (ECF No. 10); *VIP Plastic Surgery LLC v. Aetna, Inc.*, 3:25-cv-01496-MAS-TJB (DNJ) (ECF No. 11).

interlocutory appeal is pending before that court. *See Guardian Flight, LLC* (D. Conn.), No. 24-cv-00680 (MPS), ECF No. 274.

First, it believed that IDR awards were unique among arbitration awards in that the NSA says they are "binding" even before being confirmed. *Id.* at *7. Second, the district court believed that not implying a private right of action "would render IDR awards meaningless" and make them, in effect, empty promises. *Id.* at *8.

As to the first argument, whether IDR awards are described as "binding" even absent confirmation does not distinguish them from ordinary arbitration awards, for which the same is true. *See, e.g.*, *Teamsters-Employer Local No. 945 Pension Fund v. Acme Sanitation Corp.*, 963 F. Supp. 340, 346-347 (D.N.J. 1997) (confirming arbitration award where "Collective Bargaining Agreements also provided that the arbitrator's decision would be "final and binding on both parties."); *Independent Laboratory Employees' Union, Inc. v. ExxonMobil Research and Engineering Co.*, No. 18-cv-10835 (BRM)(DEA), 2019 WL 3416897 at *16 (D.N.J., July 29, 2019) ("Decisions of this district over the past two decades have uniformly held that an agreement for "final and binding" arbitration is sufficient to articulate the parties' intention to have a court enter judgment on the award."); *see Robinson v. PNC Bank, Civ.* No. 13-cv-7818 (SRC), 2017 WL 2399082, at *2 (D.N.J. June 2, 2017); *Ne. Reg'l Council of Carpenters v. KRS Constr. Grp., Civ.* No. 15-cv-47 (FLW)(LHG), 2015 WL 4773367, at *9-10 (D.N.J. Aug. 13, 2015). The district court's treatment of the "binding" language in the NSA as somehow unique to IDR awards—making them immediately enforceable in court via private right of action—skipped past the anodyne nature of that language in the context of arbitration more generally.[4]

---

[4] Nor are IDR awards automatically binding upon issuing. They are binding only "in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity involved regarding such claim" and absent a basis for vacating the award under "any of paragraphs (1) through (4) of section 10(a) of" the FAA. 42 U.S.C. § 300gg-111(c)(5)(E).

14

As to the second argument, (that IDR awards are so toothless absent a private right of action that Congress must have meant to create one), this is not the only time Congress chose to police compliance with agency enforcement over a private right of action. In the Families First Coronavirus Response Act ("FFCRA") and the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Congress required that group health insurance plans "shall reimburse the provider of … diagnostic testing" and "if the health plan or issuer does not have a negotiated rate with [the] provider," the plan or issuer "shall reimburse the provider in an amount that equals the cash price for such service as listed by the provider on a public internet website." *Genesis Laboratory Management LLC v. United Health Group, Inc.*, No. 21-cv-12057 (EP)(JSA), 2023 WL 2387400 at *3 (D.N.J., Mar. 6, 2023) (citing "Section 3202 of the CARES Act").

In *Genesis Laboratory Mgmt. LLC*, the plaintiff argued that the text and structure of the FFCRA and the CARES Act evinced Congressional intent to afford out-of-network providers with a "private right of reimbursement" to seek reimbursement for COVID-19 diagnostic testing because it would be "illogical" for Congress to give providers a personal right to payment without also giving them a remedy to enforce that right. *Id.* The district court, however, held the providers did not have an implied right of action because "there is nothing in the text or structure of those acts suggesting that Congress intended to afford a privately enforceable remedy to Plaintiff." *Id.* (internal citations omitted). The district court made clear that even if Congress *intended* to create a privately enforceable remedy in the FFCRA and the CARES Act, the lack of textual support for that intention means the courts cannot find such a remedy. *Id.*; *see also Murphy Med. Associates, LLC v. Yale Univ.*, 120 F.4th 1107, 1110 (2d Cir. 2024) (holding that the Act's "shall reimburse" language, together with a provision empowering three agencies to apply the Act's provisions

15

"show[ed] that Congress contemplated agency enforcement and did not intend to create a private cause of action despite the rights-creating language" in the act).

Here, like in *Genesis Laboratory Mgmt. LLC*, the same three agencies are charged with implementing the NSA's provisions. 42 U.S.C. § 300gg-111(a)(2)(A)(i). Plaintiff's Chicken-Little reaction to this statutory scheme is not a valid reason to override Congress's decision to rely on agency enforcement.

Indeed, Plaintiff largely ignores Congress' intent and focuses instead on a December 2023 report from the Government Accountability Office ("GAO") which reviewed the IDR process. (*See* Pl.'s Mem. 12-13); U.S. Government Accountability Office, GAO-24-106335, *Private Health Insurance: Roll Out of Independent Dispute Resolution Process for Out-of-Network Claims Has Been Challenging*, (December 2023), https://www.gao.gov/assets/870/864587.pdf (last viewed August 28, 2025). The GAO's Report described "(1) the number and types of disputes submitted between April 2022 and June 2023, and the status of their resolution; (2) selected stakeholders' experiences with the process, and agency actions to address challenges; and (3) how federal agencies oversee the process." *Id.*, at cover page. The Report, issued nearly three years after the NSA was enacted, did not address Congress's *intent*.

Nonetheless, Plaintiff misrepresents the GAO's reporting as to the effectiveness of the NSA's remedial mechanisms. For example, Plaintiff argues the IDR process is ineffective and does not comport with "the intent of the NSA" because the GAO Report stated:

> DOL officials told us they could not report the exact number of complaints the department received related to the IDR process, **because the department's tracking system does not track IDR process complaints specifically**. Rather it includes all types of complaints related to the No Surprises Act.

(*See* Pl.'s Mem. 12 (emphasis added by Plaintiff)).

16

However, Plaintiff left out the next sentence which contradicts Plaintiff's self-serving conclusion: "The officials said that as of August 2023, DOL had received 12,585 complaints related to the No Surprises Act; 11,485 of those complaints had been closed." GAO Report at p. 39. While Plaintiff may not agree with the method of tracking complaints, it cannot dispute that providers have recourse to submit complaints about the IDR process through the online portal and DOL has resolved over 90% of complaints received. *See FHMC LLC*, 2024 WL 1461989, at *3 ("An implied right of action is incongruous with such a detailed statutory scheme, in which judicial review is limited to specific instances.").

Plaintiff further argues that GAO's reporting of a specific issuer's conduct shows that the IDR process is inadequate. (*See* Pl.'s Mem. 13). However, Plaintiff turns a blind eye to the GAO's reference of comments from parties on the receiving end of IDR decisions (typically insurers) who note that there is a "lack of uniformity" and "potential bias" in the certified IDR entity decision-making, a concern shared by the initiating parties. *See* GAO Report at p. 34. While Plaintiff appears to highlight a specific party that did not pay awards issued through the IDR process, such one-off examples do not evidence Congressional intent to create an implied private right of action to enforce an IDR award through the courts.

In short, neither of these two arguments (neither the awards being "binding" nor enforceability concerns), warrant bypassing Congress's choice to omit a provision creating a private right of action—which it plainly could have added—when drafting the NSA. Whether agency enforcement is sufficient "to police . . . compliance with each IDR determination" is a question for Congress, not the courts. *Compare Guardian Flight*, 2025 WL 1399145, *8 n.6, *with Alexander*, 532 U.S. at 287.[5]

---

[5] Lastly, the district court observed that it would be odd for Congress to create a system where IDR awards are *judicially* enforceable only when the losing party first moves to vacate. *Guardian Flight LLC*,

Much like substantive federal law, "private rights of action to enforce federal law *must be created by Congress*." *Lawrence Tp. Bd. of Educ. v. New Jersey*, 417 F.3d 368, 371 (3d Cir. 2005) (citing *Alexander*, 532 U.S. at 286–87) (emphasis added). Without congressional intent, a private right of action does not exist, and courts cannot create one, no matter how much one set of industry players might desire that as a policy outcome. *See id.* Here, despite "Plaintiff's complaints [about] the current method," nonetheless, "it is not the province of this Court to order a reworking of a legislative and executive program." *Neurological Surgery Practice of Long Island, PLLC v. U.S. Dep't of Health & Human Servs.*, No. 24-cv-4503 (HG), 2025 WL 1489603, at *8 (E.D.N.Y. May 23, 2025). Plaintiff fails to carry its heavy burden to show that Congress intended a private right of action that the NSA's text plainly does not create. "Having sworn off the habit of venturing beyond Congress's intent, we will not accept respondents' invitation to have one last drink." *Alexander*, 532 U.S. at 287.

Because Congress chose not to create a private right of action when it passed the NSA, this Court should render judgment denying Plaintiff's motion to confirm arbitration awards under the NSA.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's motion to confirm and dismiss Plaintiff's Complaint against Defendant Aetna.

---

2025 WL 1399145, at *8. But nothing in the NSA says that an IDR award *is* judicially enforceable after an unsuccessful motion to vacate. *See* 42 U.S.C. § 300gg-111. On the contrary, that very FAA provision saying an arbitration award must be confirmed unless vacated is one Congress did not incorporate into the NSA. *Compare id.* § 300gg-111(c)(5)(E)(i), *with* 9 U.S.C. § 9. So, the asymmetry that concerned the district court does not exist. Instead, in both cases, the three agencies that Congress granted broad discretion to "establish by regulation" the IDR process and audit it may police compliance. *See* 42 U.S.C. § 300gg-111(a)(2), (c)(2)(A).

Fundamentally, in finding that the NSA used mandatory, "rights-creating language," the district court overlooked that creating a "new public right" to recover payment directly from insurers is different from a "private right." *See Haller*, 621 F. Supp. 3d at 354–55. Rights-creating language does not automatically mean the specific remedy of a *private* right of action.

Dated: September 2, 2025

Respectfully submitted,

**ROBINSON & COLE LLP**

*/s/ Adam J. Petitt*
Adam J. Petitt
666 Third Avenue, 20th Floor
New York, NY 10017
Tel: (215) 398-0562
Fax: (215) 398-0599
Email: apetitt@rc.com

*Attorneys for Defendant*
*Aetna*